# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

CURTIS LEWIS,                          )
                                       )
        Plaintiff,            )
                                       )
v.                                     )      No. 3:07-0559
                                       )      Judge Brown
NASHVILLE CRIMINAL JUSTICE             )
CENTER, ET AL.,                        )
                                       )
        Defendants.           )

**To:**    **The Honorable Aleta A. Trauger, United States District Judge**

## REPORT and RECOMMENDATION

For the reasons explained below, the undersigned **RECOMMENDS** the following: 1) the defendants' motion for summary judgment (Docket Entry No. 22) should be **GRANTED**; 2) this action should be **DISMISSED** because the plaintiff failed to exhaust his administrative remedies as required under 42 U.S.C. § 1915e(a); 3) the defendants' motion to dismiss for failure to prosecute (Docket Entry No. 27) should be **DENIED** as moot; and 4), any appeal by the plaintiff should **NOT** be certified as taken in good faith under 28 U.S.C. § 1915(a)(3).

## I.  INTRODUCTION
## AND
## BACKGROUND

The plaintiff brought this action under 42 U.S.C. § 1983, alleging that the defendants violated his rights under the Eighth Amendment.  The plaintiff alleges that four corrections officers "brutally assaulted" him while he was incarcerated in the Criminal Justice Center (CJC) in Nashville.

Following the initial review under 28 U.S.C. § 1915(e)(2), the plaintiff's claims against CJC and Sheriff Daron Hall were dismissed as frivolous.  (Docket Entry No. 3, pp. 3-4)  The Court ordered process to issue to the remaining defendants (the defendants) and referred the action to the

Magistrate Judge. (Docket Entry No. 3, p. 3) Thereafter, the defendants filed an answer on July 16, 2007. (Docket Entry No. 16)

A case management conference was held on August 1, 2007. (Docket Entry No. 19) The plaintiff attended the conference at which time he confirmed his address and provided a new telephone number. The plaintiff was cautioned at that time of the need to keep a current address on file with the Court.

A scheduling Order was entered on August 2, 2007. (Docket Entry No. 20) The copy of the scheduling order that was sent to the plaintiff by certified mail was returned to the Court on August 7, 2007 stamped "UNCLAIMED."[1] The plaintiff has had no contact with the Court since August 1, 2007.[2]

The defendants filed a motion to dismiss/motion for summary judgment on September 24, 2007.[3] (Docket Entry No. 22-23) The defendants argue a single point in their motion for summary judgment: the plaintiff failed to exhaust his administrative remedies prior to bringing this action in federal court. Thereafter, on November 7, 2007, the defendants also filed a motion to dismiss for failure to prosecute.[4] (Docket Entry No. 28)

_____

[1] The plaintiff was incarcerated in the Metro-Davidson County Detention Center at 5115 Harding Place in Nashville when he brought this action. The plaintiff advised the Court in person on May 29, 2007 that his address had changed to 3542 Seneca Forest Drive in Nashville. The scheduling order that was returned "unclaimed" was mailed to the Seneca Forest Drive address.

[2] It appears that the plaintiff has failed to keep a current address in a second case, *i.e.*, *Lewis v. Nashville Criminal Justice Center*, No. 3:06-0047 (M.D. Tenn. Nov. 21, 2007)(Campbell, CJ)(dismissed with prejudice for failure to prosecute and for failure to participate in discovery).

[3] Because the defendants rely on matters outside the pleadings, the defendants' motion to dismiss (Docket Entry No. 22) will be treated as a motion for summary judgment. Rule 12(b), Fed. R. Civ. P.

[4] The defendants mailed copies of both motions to the 3542 Seneca Forest Drive address.

2

The plaintiff has not responded to either of the defendants' motions.[5]  Neither has he provided the Court with a further change of address.

## II. ANALYSIS

Summary Judgment is appropriate only where "there is no genuine issue as to any material fact . . . and the moving party is entitled to summary judgment as a matter of law."  Rule 56(c), Fed. R. Civ. P., *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Newman v. Federal Express Corp.*, 266 F.3d 401, 404-05 (6th Cir. 2001).  A "genuine issue of material fact" is a fact which, if proven at trial, could lead a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party has the burden of showing the absence of genuine factual disputes from which a reasonable jury could return a verdict for the non-moving party.  *Id*. at 249-50.  Inferences from underlying facts "must be viewed in the light most favorable to the party opposing the motion."  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., Ltd.*, 475 U.S. 574, 587 (1986); *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir. 2001), *cert. denied*, 534 U.S. 896 (2001).  In considering whether summary judgment is appropriate, the Court must "look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial." *Sowards v. Loudon County*, 203 F.3d 426, 431 (6th Cir. 2000), *cert. denied*, 531 U.S. 875 (2000).  If there is a "genuine issue of material fact" then summary judgment should be denied.  *Id*.

"The moving party need not support its motion with evidence disproving the non-moving party's claim, but need only show that 'there is an absence of evidence to support the non-moving party's case.'" *Hayes v. Equitable Energy Resources Co.*, 266 F.3d 560, 566 (6th Cir. 2001)(quoting

---

[5]  Under Rule LR7.01(b), Local Rules of Court, the non-moving party has ten (10) days to respond to a motion to dismiss, and twenty (20) days to respond to a motion for a summary judgment.  "Failure to file a timely response shall indicate that there is no opposition to the motion."  *Id*.

*Celotex Corp.*, 477 U.S. at 325). "Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." *Goins v. Clorox Co.*, 926 F.2d 559, 561 (6th Cir. 1991). The party opposing the motion "must present 'affirmative evidence' to support his/her position; a mere 'scintilla of evidence' is insufficient." *Bell v. Ohio State University*, 351 F.3d 240, 247 (6th Cir. 2003)(quoting *Anderson*, 477 U.S. at 252). When a non-moving party does not respond to a motion for summary judgment, summary judgment, if appropriate, shall be entered against the non-moving party. Rule 56(d), Fed. R. Civ. P.; *see also Bennett v. Dr. Pepper/Seven-Up, Inc.*, 295 F.3d 805 (8th Cir. 2002).

Under the Prison Litigation Reform Act (PLRA), a prisoner is required to exhaust all available administrative remedies before filing a § 1983 action in district court. 42 U.S.C. § 1997e(a); *see Booth v. Churner*, 532 U.S. 731, 733 (2001). The exhaustion requirement of § 1997e(a) is mandatory, and prisoners must exhaust available grievance procedures before filing suit in federal court even though the remedy sought is not an available remedy in the administrative process. *See Booth*, 532 U.S. at 734.

To establish that he has exhausted his administrative remedies, a prisoner-plaintiff must have presented his grievance(s) "through one complete round" of the established grievance process. *Thomas v. Woolum*, 337 F.3d 720, 733 (6th Cir. 2003)(overruled in part on other grounds by *Woodford v. Ngo*, ___ U.S. ___, 126 S.Ct. 2378 (2006)). A prisoner does not exhaust available administrative remedies when he files a grievance but "d[oes] not appeal the denial of that complaint to the highest possible administrative level." *Wright v. Morris*, 111 F.3d 414, 417 n. 3 (6th Cir. 1997), *cert. denied*, 522 U.S. 906 (1997); *see also Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999). Neither may a prisoner abandon the process before completion and then claim that he exhausted his remedies, or that it is now futile for him to do so. *See Hartsfield,* 199 F.3d at 309

4

(*citing Wright*, 111 F.3d at 417 n. 3).

The defendants have provided the following documents in support of their motion for summary judgment: 1) a copy of the Davidson County Sheriff's Office (DCSO) inmate grievance procedure in effect at the time of the alleged events that gave rise to this action (Docket Entry No. 22, Ex. A); 2) the affidavit of Constance Taite, DCSO Legal Coordinator (Docket Entry No. 23, Attach. Affidavit);[6] 3) a copy of a computer grievance report pertaining to the events that gave rise to this action (Docket Entry No. 23, Attach. Affidavit, Ex. A); 4) a copy of the grievance that the plaintiff filed pertaining to the events that gave rise to this action (Docket Entry No. 23, Attach. Affidavit, Ex. B); 5) a copy of the response to the plaintiff's grievance completed by Lt. Joshua Bone (Docket Entry No. 23, Attach. Affidavit, Ex. C); and 6), copies of five (5) unrelated inmate grievances filed by the plaintiff (Docket Entry No. 23, Attach. Affidavit, Ex. D).

The copy of DCSO's grievance procedure submitted by the defendants provides that "[c]omplaints about specific incidents should be filed within seven days of the incident," and that "[a]ppeals should be made within five working days of receiving the response that is being appealed . . . ." (Docket Entry No. 22, Ex. A, pp. 2-3) Under *Woodford*, *supra* at p. 4, DCSO had a published grievance procedure that the plaintiff was required to exhaust prior to bringing this action in federal court.

The documentation provided by the defendants shows that the plaintiff filed a grievance on the same day as the alleged events that gave rise to this action. (Docket Entry No. 1, ¶ IV, Attach. p. 1; Docket Entry No. 23, Attach. Affidavit, Ex. B) The plaintiff's grievance clearly was timely. The next question is whether, having filed a grievance, the plaintiff completed one complete round

---

[6] Ms. Tate attests that, "[a]s part of [her] duties as Legal Coordinator," she is "familiar with the grievance procedures for the jails maintained" by DCSO, that she has "access to all grievance records maintained" by DCSO, and that she "reviewed the grievance records from May of 2006 to the present for Curtis L. Lewis . . . ." (Docket Entry No. 23, Attach. Affidavit, ¶¶ 3-4, p. 1)

5

of the grievance procedure prior to bringing this action in federal court.

Although the plaintiff asserts in his complaint that "[t]hey never wrote a response" to his grievance, Ms. Taite attests that Lt. Bone investigated the plaintiff's complaint, that Lt. Bone signed the grievance response form on June 26, 2006, and that "[w]ritten notice of Lt. Bone's findings was provided to the Plaintiff on June 27, 2006." (Docket Entry No. 23, Attach. Affidavit, ¶¶ 5-6, p. 2) The records on which Ms. Taite relies are attached as exhibits to her affidavit. (Docket Entry No. 23, Attach. Affidavit, Ex. A-C) These exhibits show that there was a written response to the plaintiff's grievance. The question now is whether the plaintiff ever received that response.

Exhibit A reflects that the plaintiff received notice of the response to his grievance on July 26, 2006. However, according to Ms. Taite's affidavit, the plaintiff was "transferred from CJC to Metro Detention Facility (MDF) on June 27, 2006," and that "[i]n light of his transfer, pursuant to normal procedure, the grievance response was sent to Plaintiff at MDF via the in-house mailing system."[7] This apparent conflict does not necessarily mean that the plaintiff was not on notice of the response to his grievance on June, 26, 2006 as indicated in Exhibit A.[8,9] The ambiguity requires, however, that the answer to the question be the one most favorable to the plaintiff, *i.e.*, that he was unaware of the response before he transferred.

Assuming for the sake of this analysis that the plaintiff was unaware of the response before he was transferred from CJC to MDF, the question becomes whether the plaintiff became aware of

---

[7] DCSO's published grievance procedure provides that "[r]esponses will be forwarded to complainants who are transferred to another D.C.S.O facility . . . ." (Docket Entry No. 22, Ex. A, p. 3)

[8] Exhibit C, on which Ms. Taite relies in part, was not signed or dated by the plaintiff. Therefore, it cannot be determined from Exhibit C that the plaintiff received a copy of the response prior to his transfer.

[9] Although Ms. Taite's attests that the plaintiff was notified of Lt. Bone's findings on July 27, 2006, Exhibit A, a computer record on which Ms. Taite relies, shows that the plaintiff was notified of the results of his grievance on June 26, 2006, the same day that Lt Bone signed the grievance response form. However, this date conflicts with the date provided by Ms. Taite.

6

the response after his transfer.  The plaintiff himself provides the answer to this question.  In his complaint, the plaintiff asserts that "they told me that the officers that beat me up was in the right and this was two months later."  (Docket Entry No. 1, ¶ II.F.2)  It is clear from this statement that the plaintiff was aware of the response to his grievance, and that he became aware of the response not later than two months after he transferred to MDF.[10]

 Inasmuch as the plaintiff admits that he was on notice of the response to his grievance, the next question is whether the plaintiff appealed the unfavorable decision.  The record supports the conclusion that he did not.  Although it would seem that the plaintiff's failure to appeal would end the matter, there is one further inquiry needs to be made: whether a "two month" delay in learning of the response would have rendered an appeal futile.

The copy of the DCSO's grievance procedure provides the following with respect to the disposition of a response to a grievance when a prisoner transfers:

> Responses will be forwarded to complainants who are transferred to another D.C.S.O. facility, county jail, a state department of corrections, or a federal prison, or who have been released from custody. **Such responses may require additional time to locate the complainant and reach him/her by mail.**  They will be mailed to the inmate's last know current address or to the jurisdiction receiving custody, which may be found in the inmate folder of the Jail Management System.  The D.C.S.O. will retain all returned mail for one year.

(Docket Entry No. 22, Ex. A, p. 3)(emphasis added)  Read in the context of the non-mandatory, 5-day appellate time frame in the DCSO grievance procedure, *supra* at p. 5, it is apparent from the language above that the plaintiff had grounds to excuse a late appeal had he chosen to pursue the matter.  Indeed, the plaintiff had the obligation to try; it was, after all, his responsibility to exhaust

---

[10]  The undersigned construes the complaint literally on this point, *i.e.*, that he learned about the response to his grievance by word of mouth.  However, even if the plaintiff learned by word of mouth, he had the duty to inquire further if he wished to appeal the matter.  After all, it was the plaintiff's responsibility to exhaust his administrative remedies.

his administrative remedies. In the absence of any affirmative evidence from the plaintiff that an appeal at that late date would have been futile, the defendants must be viewed as having carried their burden of proof that the plaintiff failed to exhaust his administrative remedies prior to bringing this action in federal court..

### III. RECOMMENDATION

For the reasons explained above, the undersigned **RECOMMENDS** the following: 1) the defendants' motion for summary judgment (Docket Entry No. 22) should be **GRANTED**; 2) this action should be **DISMISSED** because the plaintiff failed to exhaust his administrative remedies as required under 42 U.S.C. § 1915e(a); 3) the defendants' motion to dismiss for failure to prosecute (Docket Entry No. 27) should be **DENIED** as moot; and 4), any appeal by the plaintiff should NOT be certified as taken in good faith under 28 U.S.C. § 1915(a)(3).

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has ten (10) days from receipt of this Report and Recommendation (R&R) within which to file with the District Court any written objections to the proposed findings and recommendations made herein. Any party opposing shall have ten (10) days from receipt of any objections filed regarding this Report within which to file a response to said objections. Failure to file specific objections within ten (10) days of receipt of this R&R may constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140, *reh'g denied*, 474 U.S. 1111 (1986).

**ENTERED** this the 12th day of December, 2007.

Joe B. Brown
Magistrate Judge

8